UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                               Case No. 24-CR-00124

LORI BUTTS,
a/k/a LORI BANYARD,

        Defendant.

**GOVERNMENT'S OPPOSITION TO MOTION TO EXCLUDE**

Lori Butts claims privilege over 177 documents—produced to the government years ago by Lordan Care in response to a subpoena—and unspecified information allegedly given by Paul Kasprowicz to others. This motion should be denied. Virtually none of the documents identified on Butts' log are even *theoretically* privileged, and any privilege as to any of them has been long since waived. And there is no basis in the motion to believe that any witness identified in the motion would provide privileged information (other than Paul Kasprowicz himself, possibly). Certainly, the collection of unprivileged documents Butts cites provide no basis to believe otherwise. Accordingly, the government respectfully asks that the Court deny the motion without a hearing.

    **I.**     **Background.**

        **A. Butts' scheme and the indictment.**

Butts operates Lordan Care Adult Family Homes LLC, a company that provides adult living arrangements for certain qualified adults in Wisconsin. (ECF # 1 ¶ 4.) These "adult family homes" are locations where unrelated adults live together, receiving care that goes beyond simple

room and board. (*Id.* ¶ 1.) Lordan received government payments, from Medicare and Medicaid, to provide services at these homes for certain qualified residents. (*Id.* ¶¶ 3-6.) Lordan did not contract directly with the government; instead, like similar adult family homes in Wisconsin, an intermediary was involved—here, Community Care Inc. ("CCI"). (*Id.* ¶ 5.)

CCI is responsible for finding placements for qualifying residents referred to it in the ordinary course of its business. (*Id.* ¶ 3.) CCI receives Medicare and Medicaid money for these residents, and in turn contracts with adult family home providers to place residents. (*Id.*) Those adult family homes then bill CCI, who pays them for their services. (*Id.*) These services include contractually specified numbers of caregivers, which can fluctuate for specific residents depending on need and the specific contract arrangement. (*Id.* ¶¶ 6-7.)

As the indictment sets out, Butts used Lordan to charge CCI (and, indirectly, the government) for more care than Lordan actually provided. Butts would submit bills to CCI representing that Lordan had provided more caregiver hours than it really did. (*Id.* ¶ 15.) CCI then paid those bills, assuming that Lordan had actually provided the number of caregiver hours represented on its bills. (*Id.* ¶ 22.) Butts, as Lordan's owner, certified the billings, and signed the contracts between CCI and Lordan on Lordan's behalf. (*Id.* ¶ 11.)

This scheme resulted in the currently pending 16-count indictment. That indictment includes 8 counts of wire fraud and 8 counts of healthcare fraud. Both sets of charges rest on the same overbilling scheme. The wire fraud charges arise from Butts' use of out-of-state email servers to send messages in furtherance of the scheme to CCI employees. The healthcare fraud charges stem from Butts billing for care a particular resident did not receive.

The government began its investigation into this scheme in 2020. As part of that investigation, it served two subpoenas on Lordan. The productions Butts described came,

2

according to Butts, through Paul Kasprowicz, who is an attorney and a CPA, and the remaining three by present counsel. These first two productions contained a total of 573 files, 137 in the first 436 in the second. To be clear, the government did not serve any subpoena directly on Kasprowicz, nor attempt to obtain documents directly from him. All documents provided by Kasprowicz came by way of the Lordan subpoenas.

There was another government investigation, that predated the current criminal one. In addition to the above-described scheme, Butts also did not pay her personal taxes. This failure to properly pay generated an IRS investigation, and a judgment by the Tax Court that Butts was obligated to pay certain outstanding sums, concerning tax years 2013-2017. It appears that Kasprowicz, who has a CPA in addition to his JD, worked on the responses to those matters.

As the above demonstrates, however, the current criminal case does not concern these past tax concerns. Rather, the current case arises from Butts overbilling for care she claimed was provided to residents placed in her company's apartments by CCI.

### B. The present motion.

Butts, through her current counsel, has moved to exclude 177 documents and certain testimonial evidence, contending that the documents are privileged and should not have been produced by Kasprowicz, and that Kasprowicz talked to other potential witnesses disclosing unspecified privileged information. (Br. at 1-2.)

Initially, this motion really concerns 191 documents—the 177 documents identified by the defense, and 14 duplicates.[1] These are identified on Appendix A, which includes all the information present on defense's log, and identifies the duplicate documents (grouped together) as

---

[1] The government's computer systems flagged these duplicates, and during the meet and confer that preceded the motion's filing, the government identified them for the defense.

3

well as the government's position as to each document. These 177 documents represent nearly one third of the 573 documents Kasprowicz produced.

Butts also contends that Kasprowicz provided privileged information to third parties, presumably orally, such as CCI employees and presumably government investigators. (Br. at 3.) The motion does not specify the nature of this supposedly privileged information, or provide details into how this information would have guided the government's investigation. As described above, the government's case rests largely on documents obtained through third parties—such as the billing Butts submitted to CCI, her timesheet and payroll records obtained through third party services, and other data sources outside the documents Lordan provided.

## II. Legal Standard.

A document is privileged if it is either attorney client communication or represents attorney work product. Attorney client privilege applies to communications that meet the following standard:

> (1) where legal advice of any kind is sought (2) from a professional legal advisory in his capacity as such, (3) the communication relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Evans v. City of Chicago*, 231 F.R.D. 302, 311 (N.D. Ill. 2005) (quoting *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir.1983)). As defendant acknowledges, the privilege is construed narrowly, *United States v. White*, 970 F.2d 328, 334 (7th Cir. 1992), and the burden of establishing the privilege rests on the party who invokes it, *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991).

These privileges are subject to waiver, in particular where documents or communications are produced to a third party, including during discovery. The waiver analysis requires considering (1) whether disclosed documents were privileged, (2) whether the disclosure was inadvertent, and

4

finally, (3) even if disclosure was inadvertent, was the privilege waived. *MSP Real Estate, Inc. v. New Berlin*, 2011 WL 3047687, *3 (E.D. Wis. 2011) (citing *Judson Atkinson Candies, Inc. v. Latini–Hohberger Dhimantec*, 529 F.3d 371, 387 (7th Cir.2008).

**III.    Argument.**

This Court should deny Butts' motion, without a hearing. Butts seeks a hearing on whether Kasprowicz was engaged in an attorney-client relationship, and whether he disclosed any privileged information. In support of this motion, Butts has included her privilege log, which identifies 177 documents that were supposedly privileged that Kasprowicz therefore wrongfully disclosed. She claims—without citation or explanation—that Kasprowicz engaged in a "scheme" to provide privileged information to others, but she does not give even a single example.

No hearing is necessary.[2] Assuming, for the purposes of argument, that Kasprowicz was Butts' lawyer, there is no reasonable basis to conclude that the vast majority of the identified documents are privileged. As discussed in detail below, counsel has asserted privilege over a host of documents authored by third parties, sent to third parties, and in one case sent by Butts herself to the U.S. Attorney. These documents cannot be privileged, because these documents were not prepared by Kasprowicz (or anyone else who might be an attorney), they were sent to third parties (thereby extinguishing any possible privilege), or they were not communications concerning legal matters between Butts and an attorney.

Similarly, no hearing is necessary to consider whether to exclude or suppress witness testimony. Other than the unprivileged documents on the log, Butts has not identified any

---

[2] On the facts here, an "in camera" review of the documents makes little sense. If the Court wishes to see any or all of the documents on Butts' log or their duplicates, the government is happy to provide a copy. All are in its possession at this time and identified by Bates number, so there is no need for the Court to review those documents without the government's involvement.

5

Case 2:24-cr-00124-JPS-SCD     Filed 04/09/25     Page 5 of 15     Document 24

information disclosed to these witnesses that might be privileged. Nor has she cited any caselaw or statute in favor of suppressing their testimony. She has made only generalized accusations, without support in the record or in law. As such, this Court should deny the motion.

### A. This Court should reject the privilege claim with respect to almost all of the documents.

As noted above, the documents identified on Butts' log are not privileged. At minimum, any privilege as to all of the documents was long ago waived. To avoid the Court's and parties' time on unnecessary litigation, the government will agree not to use 8 documents on Butts' log (and 5 duplicates of those documents), which appear to represent materials concerning Butts' personal taxes that may have been generated during the prior IRS investigation. As to the balance of the documents, they were never privileged to begin with, and any privilege has been waived in any case. As such, this Court should deny the motion as to the rest of the documents.

#### 1. The undisputed documents.

As an initial matter, the government—to avoid litigating documents that are not relevant to its case—will agree not to use 13 of the 191 documents. (This includes 8 documents on the log, and 5 duplicates of them.) These are highlighted in grey on Appendix A, and identified as "Not in dispute."

As discussed below, none of these documents is *actually* privileged. Initially, they, like all the documents identified in the motion, are subject to waiver as a result of their production in response to the government's subpoena and by the many years that have passed since they were produced. That said, some of these documents reflect handwritten notes, or are information relevant to Lori Butts' personal taxes. Given the long-pending IRS investigation into Butts' unpaid taxes, it is at least theoretically possible that these documents could have been prepared in anticipation of possible litigation, by Kasprowicz acting in his role as an attorney. Accordingly, to

6

preserve the Court's and the parties' time, the government will not use these 13 documents to avoid litigating whether they are privileged.

### 2. The remaining documents are not privileged.

As to the rest of the documents, none should be excluded. As discussed below, these materials are not privileged. Indeed, it is often difficult to assess the basis on which these documents could even theoretically be entitled to privilege.

#### a. Bank/Payroll Information

Of the 191 documents, 25 represent bank records or payroll information. This is comprised of 24 of the documents on defense's log, and one duplicate. These are indicated in light blue on Appendix A.

It is unclear why defense thinks these documents could be subject to either privilege or work-product protections. They were prepared by third parties—generally (according to Butts' log) BMO Harris Bank, or Paychex—and were not obviously sent to an attorney, certainly not by Butts to her personal counsel. For most, such as the bank records, the government could (and has) obtained identical information from third parties, which illustrates the documents' non-privileged nature. And there is no basis to exclude financial records in a federal criminal prosecution. The defense has not even attempted to construct such an argument, and has not cited any case or statute providing that purely financial records, stored by third parties, could be protected from discovery or use in a criminal proceeding.

Finally, numerous substantively indistinguishable documents are present, unchallenged, in other parts of the production. Butts' current counsel produced 26 BMO Harris bank statements (one example is at BUTTS-78097). It is unclear why the defense believes these records are different from the check images it is attempting to claw back through this motion. Regardless, the

7

unchallenged production of similar information further illustrates that these documents are not privileged and should not be suppressed.

   b. **CCI Authorizations**

Of the 191 documents, 36 are resident authorizations prepared by CCI. All are on Butts' log, there are no duplicates. They are indicated in tan on Appendix A.

These documents are not plausibly privileged in any way. Each of them was authored by CCI (as Butts' log acknowledges), not Lordan or its lawyers. When CCI authorizes Lordan to bill for a specific resident, it generates a form identifying (1) the dates covered by the authorization, (2) the codes Lordan may bill, and (3) the number of times Lordan may bill that code during the covered time period. These 36 documents are those forms, sent to Lordan from CCI.

Like the bank records, these documents are stored by a third party (here, CCI). The government has obtained CCI's copies of these records, and they are contained within the production provided to Butts at the outset of the criminal proceedings. Given that these records are made and kept by a third party, rather than Butts or her attorney, there is no basis for their exclusion as privileged materials.

   c. **Employment Material**

Of the 191 documents, 86 are employee files. All are on Butts' log, there are no duplicates. These are indicated in light purple on Appendix A.

These are generally large files, with what would likely be distinct documents if stored in a paper file. They include, for example, materials such as the employee's application form, background check information, documents confirming employee onboarding training, and similar materials. For example, one (starting at BUTTS-000081783) is a letter and certificate from the Red Cross to an employee, certifying training on Conscious Choking. There is no indication from

8

these files that they were authored by an attorney (and defendant's log contains no such indication) or that they were used to solicit attorney advice. Given these facts, there is no basis on which they can be privileged.

### d. Lordan Care Tax Information

Of the 191 documents, 8 are Lordan Care's tax information. This is comprised of 5 of the documents on defense's log, and 3 duplicates. These are indicated in pink on Appendix A.

These materials are corporate tax records. Although the government is not challenging the few documents pertaining to Butts' personal taxes, in deference to the earlier IRS investigation, there is no basis to exclude the records on the log pertaining to Lordan's corporate taxes. According to Butts' log, many of these documents were sent to the IRS, which would of course eliminate any theoretical privilege. And irrespective of where they were sent, the log does not claim that any of these documents was sent to or drafted by an attorney. They do not appear to have been prepared under an attorney's supervision, or in anticipation of litigation of some sort. Accordingly, they are simply not privileged.

### e. Resident Information

Of the 191 documents, 6 are documents containing patient records, generally patient care records. All are on Butts' log, there are no duplicates. These are indicated in green on Appendix A.

These documents contain information regarding how specific residents received care at Lordan, or information about medical conditions these residents possess. Such material is simply not privileged—it does not relate to any legal advice or legal question. Like the other records identified on Lordan's log, these documents are created by Lordan in the course of its work, and

9

contain day-to-day operational information. There is no reason to believe they were drafted by an attorney or sent to one. Butts' request to exclude these documents is meritless.

### f. Third-Party Preparer

Of the 191 documents, 13 are not privileged because they were prepared by a third party (often among other reasons). This category includes 9 documents on defendant's log, and 4 duplicates (3 of the same document, BUTTS-00068608). These are indicated in yellow on Appendix A.

Each of these materials was prepared by a third party—i.e., someone outside of Lordan. According to defense's log, this includes six documents from CCI. Another document is prepared by the Wisconsin Department of Health Services. One (with a duplicate) is an engagement letter prepared by one of Butts' accountants. Because these documents were drafted by third parties, not lawyers representing Butts, they are not privileged.

The final four documents are all identical (one of them is on the defense log, and the other three are duplicates). This, per the filename, is a document sent from the IRS to defense counsel. Obviously, a document prepared by the government cannot possibly be privileged here, in a case against the government. But, in addition, two of the duplicates of the document were produced by Butts' current counsel, rather than by Kasprowicz. There is no question that these documents should not be treated as privileged.

### g. Third-Party Recipient

Finally, there are 3 documents on the privilege log (plus a duplicate for a total of 4) that are not privileged because they were transmitted to a third party. These are in bright orange on Appendix A.

10

The first of these documents is the letter Butts sent to the United States Attorney; as discussed above, this is not a privileged document. There are two copies of an application for a Paycheck Protection Program loan that went to a bank as part of the loan process; again, the disclosure of this document makes it not privileged. And, finally, there is a copy of Lordan's bylaws. The last page of this documents is stamped "FILED," and it appears to be a copy of the version of the bylaws that was submitted to the state of Wisconsin. This is a publicly available document, and is not entitled to privilege.

\* \* \* \* \*

In sum, none of these categories of documents are privileged. The identified documents represent mine-run business operations—information about employment, patient care, financial matters, or records made by others and kept in Lordan's files. Butts cannot carry her burden to demonstrate that these documents are privileged. *See White*, 950 F.3d at 430. This Court does not need to hold a hearing to determine that these materials are not subject to privilege.

### 3. Any privilege has been waived.

As discussed briefly above, even where materials are subject to attorney-client privilege, that privilege may be waived by production of the documents. To assess waiver, the Court considers (1) whether disclosed documents were privileged, (2) whether the disclosure was inadvertent, and finally, (3) even if disclosure was inadvertent, was the privilege waived. *MSP Real Estate, Inc. v. New Berlin*, 2011 WL 3047687, *3 (E.D. Wis. 2011) (citing *Judson Atkinson Candies, Inc. v. Latini–Hohberger Dhimantec*, 529 F.3d 371, 387 (7th Cir. 2008).

First, as discussed above, none of the documents is privileged. But the circumstances here demonstrate that the production of these documents was not inadvertent. "Courts have not established a bright-line rule for determining whether a document was inadvertently produced; instead, courts look at the circumstances surrounding the disclosure." *Judson Atkinson*, 529 F.3d

11

at 388. One factor courts look to is the size of the production and the alleged error; a large production with a few privileged documents within it is more likely to lead to a finding of inadvertence. *See MSP Real Estate*, 2011 WL 3047687, at *3. But here, the production was relatively small, as Kasprowicz produced only 573 documents. Butts now asserts that 177 of those (nearly a third) were produced in error. This ratio does not suggest that the decision to produce the documents was anything other than intentional.

Finally, even if disclosure was inadvertent, any privilege should be deemed waived. To assess waiver, courts use a "balancing test," considering "(1) the reasonableness of the precautions taken to prevent disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness." *Judson Atkinson*, 529 F.3d at 388–89. Each of these factors favor waiver.

First, there is no basis to believe that Butts or Kasprowicz followed any precautions to avoid disclosure—indeed, one of the documents Butts now wishes to clawback is a letter *she herself* wrote to the the-U.S. Attorney. Lordan also had ample time to respond to the subpoenas, while the government repeatedly asked for the documents responsive to the subpoena, it gave Lordan multiple years to complete its production, and did not seek legal action to compel production. The second factor also favors a finding against Butts, as Butts has not made any attempt to clawback these materials until shortly before she filed this motion. The third and fourth factors—the scope of discovery and extent of the error—also militate in favor of waiver; as discussed above, the challenged documents are a substantial portion of the total, small production from Kasprowicz.

Finally, fairness is a major concern against allowing clawback of these documents now. Butts has not identified any "disproportionally harsh or unfair consequences" that would result

12

from waiver. *See Wunderlich-Malec Systems, Inc. v. Eisenmann Corp.*, 2007 WL 3086006, at *6 (N.D. Ill., Oct. 18, 2007). These documents have been in the government's possession (with Butts' knowledge) for years, and allowing her to remove them now (and to seek to limit "derivative" evidence) would unfairly limit the government, which reasonably relied on a production of documents by Lordan to continue its investigation. Butts has also made no allegation that any government representative had any reason to believe these materials were privileged, particularly given that many of them could be obtained from third parties.

Under the circumstances presented by the motion, this Court should reject Butts' attempt to clawback documents. They are not privileged, have been in the government's possession for years, and their production appears intentional. This Court should deny the motion to suppress.

### B. This Court should not exclude any testimony.

Butts also asks the Court to exclude the testimony of witnesses, and wishes to use the evidentiary hearing to examine "whether the disclosure of Ms. Butts' privileged communications by Attorney Kasprowicz directed and impacted the investigation of this case." (Br. at 11.) As the above makes clear, however, none of the documents identified on Butts' log are privileged. Although Butts claims that the investigation is detailed in "hundreds of pages of reports," she cites no specific report that refers to any information disclosed directly by Kasprowicz, nor does she identify how any of the specific documents above would have misdirected the investigation.

Butts claims that an "in camera" disclosure of Kasprowicz's misconduct is necessary. But she *also* contends that Kasprowicz's actions are "detailed in hundreds of pages of reports form the government." (Br. at 9.) Butts has not cited even a single of these pages, and there would be no need to do so in camera, as any information contained in a government report is already in the

13

government's possession. Thus, there is no need for an "in camera" discussion of Kasprowicz's disclosures that are purportedly already contained in government reports.

But more globally, there is no basis to exclude testimony from some unnamed number of other witnesses. If Butts believes that certain witnesses possess privileged information, *she could have identified that information*. She attempted to do so in her privileged log. Given that the privilege log is comprised nearly entirely of documents produced *by other parties*, it is hard to see what privileged derivative information Butts might wish to suppress.

As an example, Butts claims Kasprowicz provided information to CCI employees. But, CCI was the entity responsible for paying Lordan for its work and supervising Lordan's care of its residents. In that capacity, CCI employees engaged in hundreds of written exchanges with Butts. Those exchanges, however, are a natural outgrowth of the companies' work together. Butts claims privilege over more than two dozen documents prepared by CCI, but no document CCI sent to Lordan could possibly be privileged at all, much less privileged as to Lordan. Under the circumstances here, there no basis to believe that any witness has obtained privileged information, or that a hearing is necessary to consider that issue. The government respectfully asks that this Court deny the motion.

### IV. Conclusion.

As discussed above, Butts' motion is without merit. Accordingly, the government asks that this Court deny the motion without a hearing.

Dated at Milwaukee, Wisconsin, this 9th day of April, 2025.

Respectfully submitted,

RICHARD G. FROHLING
Acting United States Attorney

By: */s/ Carter B. Stewart*

14

ZACHARY J. COREY
CARTER B. STEWART
Assistant United States Attorneys
Office of the United States Attorney
Eastern District of Wisconsin
517 E. Wisconsin Ave, Room 530
Milwaukee, WI 53202
Phone (414) 297-1700