UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                            Case No. 24-CR-124-JPS-SCD

LORI BUTTS,

    Defendant.

### REPORT AND RECOMMENDATION
### ON DEFENDANT'S MOTION TO EXCLUDE

After being indicted for fraud, Lori Butts learned that the government's case was built largely on evidence her former attorney disclosed to investigators in response to two subpoenas. She has moved to exclude the attorney's testimony and all derivative evidence, arguing that the challenged testimony and other evidence are protected by the attorney-client privilege. Butts, however, has failed to make out even of *prima facie* case for privilege, and even if she had, any privilege was waived. Accordingly, I will recommend that Butts' motion be denied without a hearing.

### BACKGROUND

Between July 2019 and December 2020, Lori Butts owned and operated Lordan Care Adult Family Home, LLC, a company that provides adult family homes for certain qualified adults in Wisconsin. Indict. ¶¶ 4, 10, ECF No. 1. An adult family home is a type of assisted living facility where individuals aged eighteen and older receive care that goes beyond room and board. *Id.* ¶ 1. Lordan Care provided living arrangements and related services for individuals referred by Community Care, Inc., a managed care organization that uses

government funding to find placements for qualifying residents. *Id.* ¶¶ 2–5. When Lordan Care and Community Care agreed to place an adult resident in one of Lordan Care's adult family homes, they entered into contracts that specified (among other things) how many caregivers Lordan Care would provide to each resident and the payment Lordan Care would receive for providing those caregivers. *Id.* ¶¶ 6–7. Lordan Care billed Community Care for the services the company says it provided.

In 2018, Butts retained Paul Kasprowicz, a licensed attorney and a certified public accountant, to provide legal and business services related to Lordan Care. *See* Def.'s Mot. 3–5, ECF No. 19. Kasprowicz also assisted Butts with her personal finances. In 2020, the government began investigating Butts and Lordan Care for possible fraud. *See* Govt's Resp. 2–4, ECF No. 24. As part of that investigation, the government served two subpoenas on Lordan Care. Kasprowicz, on behalf of the company, produced 573 files in response to the subpoenas.

Based on evidence received from Kasprowicz and additional investigation, in June 2024, a federal grand jury indicted Butts for eight counts of healthcare fraud and eight counts of wire fraud. *See* Indict. ¶¶ 23–24. The indictment alleges that Butts used Lordan Care to charge Community Care (and, indirectly, the government) for more care than Lordan actually provided. *See id.* ¶¶ 10–22. Specifically, the indictment alleges that Butts submitted bills that falsely represented Lordan Care had provided more caregiver hours than it really did. Community Care paid those bills using government funds, and Butts certified the billings. As part of the alleged scheme, Lordan Care received about $1.4 million to which it was not entitled, a substantial portion of which Butts supposedly converted for her personal use.

The matter is assigned to United States District Judge J.P. Stadtmueller for trial and to me for resolving pretrial motions. *See* 28 U.S.C. § 636; Fed. R. Crim. P. 59; E.D. Wis. Gen. L. R. 72. On March 21, 2025, Butts filed a motion to exclude Kasprowicz's testimony and all derivative evidence, as well as a request for an *in-camera* inspection and an evidentiary hearing. *See* ECF No. 19. The government submitted briefs in opposition to Butts' hearing request, *see* ECF No. 21, and Butts' motion to exclude, *see* ECF No. 24. Butts filed her reply brief on April 25, 2025. *See* ECF No. 27.

## DISCUSSION

Butts contends that the government's case against her relies largely on information Kasprowicz learned through his representation of Butts and disclosed to investigators without Butts' consent. She has moved for an order excluding from use at trial any and all privileged communications she made to Kasprowicz during their attorney-client relationship and all evidence derived from the disclosure of those allegedly privileged communications. Specifically, Butts seeks to exclude Kasprowicz's testimony, the potential testimony of others, and certain documents Kasprowicz (on behalf of Lordan Care) previously disclosed to the government. Butts asks the court to review the disputed documents *in camera* to determine if they are protected by the attorney-client privilege. She also requests an evidentiary hearing on whether an attorney-client relationship existed, whether Kasprowicz disclosed privileged communications between himself and Butts to other parties (including potential witnesses, the government, and government investigators), and whether Kasprowicz's disclosure of privileged communications directed and impacted the government's investigation.

The government argues that an *in-camera* review is not necessary, and that Butts' motion can be denied without a hearing because (1) none of the documents are even

3

theoretically privileged; (2) any privilege has been waived; and (3) and there is no basis to believe that any witness (except for possibly Kasprowicz) would provide privileged information.

"The attorney-client privilege is 'one of the oldest recognized privileges for confidential communications' known to the common law." *United States v. BDO Seidman*, 337 F.3d 802, 810 (7th Cir. 2003) (quoting *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998)). "The purpose of the privilege is to encourage full disclosure and to facilitate open communication between attorneys and their clients." *Id.* (citing *Swidler*, 524 U.S. at 403). "However, because 'the privilege has the effect of withholding relevant information,' courts construe the privilege to apply only where necessary to achieve its purpose." *Id.* at 810–11 (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)).

"The privilege extends to confidential communications between counsel and his or her client '[w]here legal advice of any kind is sought . . . from a professional legal advisor in his capacity as such.'" *Towne Place Condo. Ass'n v. Phila. Indem. Ins. Co.*, 284 F. Supp. 3d 889, 893 (N.D. Ill. 2018) (quoting *Rehling v. City of Chicago*, 207 F.3d 1009, 1019 (7th Cir. 2000)). More specifically,

> (1) where legal advice of any kind is sought (2) from a professional legal advisory in his capacity as such, (3) the communication[s] relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Evans v. City of Chicago*, 231 F.R.D. 302, 311 (N.D. Ill. 2005) (quoting *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983)). "The party asserting the attorney-client privilege has the burden of establishing each of those elements on a document-by-document basis." *Id.* (citing *Lawless*, 709 F.2d at 487).

## I. Butts Has Failed to Satisfy Her Burden of Establishing Each Element of the Attorney-Client Privilege Regarding the Disputed Documents

In support of her motion, Butts submitted a privilege log listing 177 documents (plus 14 duplicates) that she says Kasprowicz wrongfully disclosed in response to the government's subpoenas. *See* Def.'s Privilege Log, ECF No. 20. The government insists that there is no reasonable basis to conclude that any of the 177 documents is privileged and that any privilege that did exist has long been waived. Nevertheless, in an effort to avoid unnecessary litigation, the government has agreed not to use 8 of the documents (plus 5 duplicates). *See* Govt's Resp. 6–7 (citing App. A, at 1–3, 17, 34, 41, ECF No. 24-1). Those documents include Kasprowicz's handwritten notes (which might constitute his work product but not attorney-client privileged information) and information related to Butts' personal taxes.

It is difficult to see, based on a careful review of Butts' privilege log, how any of the remaining 169 documents could possibly be privileged. A vast majority of those documents appear to be general business records that were prepared by third parties and/or kept by Lordan Care in the ordinary course of its business (e.g., bank records, payroll information, resident authorizations prepared by Community Care, employee files, company tax information, patient records, etc.), including just one document Butts says may have been drafted by Kasprowicz. However, "documents prepared for a business purpose are not privileged," even when drafted by an attorney. *Evans*, 231 F.R.D. at 312 (citing *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000)). Other documents were sent to third parties, and so any claimed privilege has been waived. *See id.* ("[T]he attorney-client privilege is generally waived when documents are disclosed to third parties.") (citation and internal quotation marks omitted). The privilege log lists only one document that Kasprowicz received—a letter written by Butts and sent to the U.S. Attorney. *See* Def.'s Priv. Log, at 39.

5

To the extent that letter contains any privileged information, Butts waived the privilege by sharing it with the government.

Butts erroneously seems to believe that the attorney-client privilege protects all information that Kasprowicz had access to because of his legal representation. *See* Def.'s Mot. 5–6 ("Attorney Kasprowcz only had access to the bank and tax records and other documents because of his representation of Ms. Butts and Ms. Butts' communications to Attorney Kasprowicz regarding these documents."). If that were true, presumably the attorney-client privilege would apply to all business records of every company in America. "Not all information transmitted to an attorney becomes cloaked with the attorney-client privilege." *United States v. White*, 970 F.2d 328, 334 (7th Cir. 1992). "Rather, it shields from disclosure only communications made for the purpose of obtaining legal advice." *Id.* at 335 (citing *Lawless*, 709 F.2d at 487; *United States v. Weger*, 709 F.2d 1151, 1154 (7th Cir. 1983); *In re Walsh*, 623 F.2d 489, 494 (7th Cir. 1980)).

None of the documents identified on Butts' privilege log appear related to legal advice solicited from or given by Kasprowicz. Although Butts generally alleges that Kasprowicz provided legal counsel related to the formation of Lordan Care, completed Butts' taxes, and managed Butts' business and financial matters, *see* Def.'s Reply 6–7, she fails to specifically explain how any of the documents themselves are privileged. Communicating with Kasprowicz and providing him access to confidential business information did not transform otherwise non-privileged material into a privileged one. *See Towne Place Condo Ass'n*, 284 F. Supp. 3d at 895–96; *see also United States v. Frederick*, 182 F.3d 496, 500 (7th Cir. 1999) ("Communications from a client that neither reflect the lawyer's thinking nor are made for the purpose of eliciting the lawyer's professional advice or other legal assistance are not

6

privileged."); *Lee v. Chi. Youth Ctrs.*, 304 F.R.D. 242, 249 (N.D. Ill. 2014) ("From these fundamental principles, it inexorably follows that sending an otherwise non-privileged document to a lawyer in connection with a request for legal advice will not make the attached document independently privileged and immune from discovery, even though the communication seeking legal advice is privileged.") (citation omitted); *Medline Indus. v. Wypetech, LLC*, 20 CV 4424, 2020 WL 6681353, 2020 U.S. Dist. LEXIS 211440, at *7 (N.D. Ill. Nov. 12, 2020) ("Where a party submits a non-privileged business document to an attorney, the document does not become privileged even though the attorney's legal advice regarding the document may be protected.") (collecting cases).

In sum, Butts has not demonstrated even a *prima facie* case of privilege concerning any of the documents listed on her privilege log.

## II. The Disputed Documents Were Not Inadvertently Produced, and Butts Waived Any Attorney-Client Privilege by Disclosing Them to the Government

"[A]s the Seventh Circuit's formulation of the elements of the privilege in *Lawless* makes clear, the attorney-client privilege may be waived. For example, 'the attorney-client privilege is generally waived when documents are disclosed to third parties.'" *Evans*, 231 F.R.D. at 312 (quoting *IBJ Whitehall Bank & Trust Co. v. Cory & Assocs.*, No. 97 C 5827, 1999 WL 617842, 1999 U.S. Dist. LEXIS 12440, at *8 (N.D. Ill. Aug. 10, 1999)). Reviewing courts generally assess claims of privilege in three steps, first making a threshold determination as to whether the disputed document is indeed privileged. *See MSP Real Estate, Inc. v. City of New Berlin*, Nos. 11-C-281 & 11-C-608, 2011 WL 3047687, 2011 U.S. Dist. LEXIS 81650, at *7 (E.D. Wis. July 22, 2011) (citing *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 387–88 (7th Cir. 2008)). If a document is privileged, courts proceed to the second step, analyzing whether the document was inadvertently produced. Finally, even if a

7

document is privileged and was inadvertently produced, at the third step courts must still determine whether the privilege was waived.

Butts has not demonstrated that any of the documents listed in her privilege log are privileged; but even if she had, it appears the disclosure of those documents was intentional, not inadvertent. "In determining whether the disclosure was inadvertent, the Court must look to the totality of the circumstances." *MSP Real Estate*, 2011 U.S. Dist. LEXIS 81650, at *8–9 (citing *Wunderlich-Malec Sys., Inc. v. Eisenmann Corp.*, No. 05 C 4343, 2007 WL 3086006, 2007 U.S. Dist. LEXIS 78620, at *9 (N.D. Ill. Oct. 18, 2007)). "Factors include 'the total number of documents reviewed, the procedures used to review the documents before they were produced, and the actions of the producing party after discovering that the documents had been produced.'" *Id.* at *9 (quoting *Wunderlich-Malec Sys.*, 2007 U.S. Dist. LEXIS 78620, at *9).

All three factors weigh heavily against a finding of inadvertence in our case. First, the overall production was relatively small (573 documents), and Butts claims privilege of 177 documents. That ratio—just over 30%—strongly suggests that the disclosure wasn't some innocent mistake. Second, Butts has not described the process she and her legal team used to respond to the government's subpoenas or any precautions implemented to prevent the disclosure of privileged material. Third, although it's unclear exactly when the production occurred, Butts did not attempt to claw back the allegedly privileged materials until shortly before filing this motion. The totality of those circumstances demonstrate that Kasprowicz's disclosure (on behalf of Lordan Care) was not inadvertent.

Moreover, even if the documents were privileged and had been inadvertently produced, Butts waived the privilege by disclosing the documents in response to the

8

government's subpoenas. In assessing waiver, courts often employ a balancing approach, considering: "(1) the reasonableness of the precautions taken to prevent disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness." *Judson Atkinson Candies*, 529 F.3d at 388–89 (quoting *Harmony Gold U.S.A., Inc. v. FASA Corp.*, 169 F.R.D. 113, 116–17 (N.D. Ill. 1996)). Each factor weighs in favor of finding waiver.

Butts insists that she did not authorize Kasprowicz to disclose privileged communications to the government. However, she does not describe any steps she took to prevent the disclosure. The government asserts that Lordan Care was given years to respond to the subpoenas. *See* Govt's Resp. 12. Is Butts claiming that she didn't know about them? That Kasprowicz and Butts didn't discuss how to respond and what documents would be turned over? Or that Kasprowicz surreptitiously disclosed information they had agreed to keep confidential? We don't know, because Butts proffers no facts about the subpoena review process. *See MSP Real Estate*, 2011 U.S. Dist. LEXIS 81650, at *15 (explaining that the party contesting waiver "must support its assertion that it used reasonable precautions with specific facts which would demonstrate that a sufficient screening process was used") (citation omitted). Also, it appears Butts did not act quickly enough to rectify the error (Butts was indicted in June 2024 and didn't file this motion until March 2025), the scope of the overall disclosure was relatively small (two subpoenas, which resulted in the production of just 573 documents), and the allegedly privileged documents make up a large portion of the overall production (177 of the 573 documents). Finally, it would be unfair to allow Butts to claw back these documents now, as the government has possessed them for years and reasonably relied on them to further its investigation. Butts "has not identified any 'disproportionately harsh or

9

unfair consequences' that [she] would encounter as a result of a waiver." *MSP Real Estate*, 2011 U.S. Dist. LEXIS 81650, at *28 (quoting *Wunderlich-Malec Sys.*, 2007 U.S. Dist. LEXIS 78620, at *16). At its essence, this is a tardy attempt to unring the bell.

In sum, the disputed documents were not inadvertently produced, and Butts waived any arguable privilege in them when Kasprowicz disclosed the documents in response to the government's subpoenas. *See Evans*, 231 F.R.D. at 312–13 (finding attorney-client privilege waived where documents were previously produced in response to a subpoena).

### III. Butts Has Failed to Provide a Basis for Excluding Any Testimony

In addition to the disputed documents, Butts seeks to exclude Kasprowicz's testimony and all evidence law enforcement obtained as a result of Kasprowicz's disclosure of information he learned through his attorney-client relationship. Butts only briefly mentions other potential derivative evidence, including the names, identities, and potential testimony of Matthew Moen, Angela Meyer, other employees of Community Care, and various IRS employees. *See* Def.'s Mot. 1. Moen apparently was the director of provider management at Community Care, and Meyer a provider quality specialist. *Id.* at 9. According to Butts, Kasprowicz disclosed confidential information concerning Lordan Care to Moen and Meyer, who relayed that information to government investigators.

Butts has failed to explain why any testimony should be excluded. Her privilege log lists a number of documents prepared by Community Care employees. However, as explained above, those documents are not privileged as to Butts or Lordan Care. Butts does not identify any other allegedly privileged information that Moen, Meyer, or any other Community Care employee possess. Kasprowicz, on the other hand, does likely have privileged information. But that does not justify excluding all his testimony, assuming he is called to testify at some

10

future trial. Any issues with Kasprowicz's testimony can be handled via a motion in limine or during the yet-to-be-scheduled trial.

### IV. Neither An *In-Camera* Inspection Nor An Evidentiary Hearing Is Needed to Resolve Butts' Motion

Butts insists that an *in-camera* inspection and an evidentiary hearing are needed to resolve disputed facts as to whether an attorney-client relationship existed between Butts and Kasprowicz, whether any of the documents listed on the privilege log are indeed privileged, and whether the privilege was waived. I disagree. Contrary to Butts' argument, there is no dispute about whether an attorney-client relationship existed—the government explicitly assumed that Kasprowicz was her lawyer at the time. *See* Govt's Resp. 5.

Moreover, although an *in-camera* inspection often plays an "important role" in determining whether the attorney-client privilege exists, *In re Grand Jury Proceedings*, 220 F.3d 568, 571–72 (7th Cir. 2000), it is apparent from the face of Butts' privilege log and her motion that none of the documents is even theoretically privileged. Instead, her motion is premised on a fundamentally unsound definition of the attorney-client privilege. Butts' privilege log lists the Bates number of the disputed document, the document type, the subject matter, the date the document was prepared, its author(s), its recipient(s), and the alleged basis for privilege. *See* ECF No. 20. Of those 177 documents, only 7 were allegedly authored by Kasprowicz, and the government has agreed not to use 6 of the 7. *See* Govt's Resp. 6–7. The remaining document (Bates # 83257) consists of banking/payroll information prepared by third parties, *see* Def.'s Priv. Log, at 26; there is no reason to believe it contains or was transmitted to Kasprowicz for the purpose of obtaining legal, rather than business, advice. Likewise, the privilege log lists only 1 document (Bates #85298) received by Kasprowicz, but that was a letter Butts wrote *to the U.S. Attorney*—thus, any privilege clearly was waived. *See*

11

*id.*, at 39. Butts argues that Kasprowicz had access to the documents as a result of his legal representation; however, that's not enough to establish the attorney-client privilege. She fails to proffer any specific facts to suggest that the documents were transmitted to Kasprowicz for the purpose of obtaining legal advice. Because Butts has not made out even a *prima facie* case of privilege, there is no need for an *in-camera* review.

Similarly, Butts proffers no specific facts to counter the government's waiver argument. Butts acknowledges that all the documents listed in her privilege log were disclosed to the government in response to subpoenas. *See* Def.'s Mot. 56; Def.'s Priv. Log, at 1. In an attempt to escape the consequences of that undisputed fact, Butts accuses Kasprowicz of basically working as an undercover agent for the government. But she fails to provide any information about the subpoena review process that would support her claim to being in the dark about Kasprowicz's disclosures. Butts' unsupported conclusions are insufficient to create a factual dispute that would need to be resolved via an evidentiary hearing.

### V. Suppression Is Not an Appropriate Remedy for the Violation Butts Alleges

In her initial motion, Butts sought to *exclude* from use at trial Kasprowicz's testimony and all evidence derived from his allegedly unlawful disclosures, including the documents listed in her privilege log. *See* Def.'s Mot. 1–2, 6, 9, 11. However, in her reply brief, Butts seeks to *suppress* all confidential privileged communications and derivative evidence. *See* Def.'s Reply 2, 9–10.

Suppression of evidence typically is reserved for when the government violates a defendant's constitutional right. *See United States v. Gardner*, No. 19-CR-99, 2023 WL 9111306, 2023 U.S. Dist. LEXIS 227673, at *39 (E.D. Wis. Nov. 1, 2023) (citing *United States v. Segal*, 313 F. Supp. 2d 774, 780 (N.D. Ill. 2004)). The attorney-client privilege, however, is

an evidentiary privilege, not a constitutional right. *Id.* (citing *Lange v. Young*, 869 F.2d 1008, 1012 n.2 (7th Cir. 1989)). Disregarding the attorney-client privilege violates a defendant's constitutional right to due process only "if the violation 'was caused by serious governmental misconduct that is outrageous enough to shock the conscience of the Court.'" *Id.* at *39–40 (quoting *Segal*, 313 F. Supp. 2d at 780).

Butts has not alleged any outrageous conduct by the government that shocks the conscience. She accuses the government of continuing to accept information from Kasprowicz despite knowing about the attorney-client relationship. But there is no evidence that the government sought Kasprowicz out and put him up to divulging his client's confidential, privileged information. Rather, the government served its subpoenas on Lordan Care, not Kasprowicz directly, and it's unsurprising that an attorney responded on the company's behalf. Furthermore, based on Butts' privilege log, it does not appear that any of Kasprowicz's disclosures were obviously privileged. So the government had no reason to question the disclosures, halt the production, or return any documents.

In sum, even if Butts had shown that Kasprowicz disclosed privileged communications to the government, she has not demonstrated that suppression is an appropriate remedy for that alleged violation.

## CONCLUSION

Butts has failed to provide a reasonable basis for finding that any of the documents listed in her privilege log are in fact privileged or that any witness (except for possibly Kasprowicz) will testify about privileged information. Even if a disputed document were privileged, the documents were not inadvertently produced, and Butts waived any privilege when Kasprowicz, on behalf of Lordan Care, disclosed them in response to the government's

13

Case 2:24-cr-00124-JPS    Filed 05/22/25    Page 13 of 14    Document 28

subpoenas. Because Butts has not made out a *prima facie* case for privilege or alleged any disputed material facts, I don't need to review the documents *in camera* or conduct an evidentiary hearing. And finally, suppression is not warranted, as Butts has not alleged any serious government misconduct.

Accordingly, for all the foregoing reasons, the court recommends the district judge **DENY** the defendant's motion to exclude, ECF No. 19. The court directs the parties' attention 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Crim. P. 59(b), and E.D. Wis. Gen. L. R. 72(c), whereby written objections to any recommendation herein, or part thereof, may be filed within fourteen days of the date of service of this recommendation. Objections must be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Failure to file a timely objection with the district judge shall result in a waiver of a party's right to appeal. If no response or reply will be filed, please notify the district judge in writing.

Dated at Milwaukee, Wisconsin, this 22nd day of May, 2025.

*/s/ Stephen C. Dries*
STEPHEN C. DRIES
United States Magistrate Judge