UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                           Case No. 24-CR-00124

LORI BUTTS,
a/k/a LORI BANYARD,

        Defendant.

## GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS TO REPORT AND RECOMMENDATION

Lori Butts has asked to suppress 177 documents (plus 14 duplicates) that she contends are protected by attorney-client privilege or the work-product doctrine, and to exclude testimony from witnesses she claims would disclose privileged information. (ECF # 19.) Magistrate Judge Dries has recommended denying her motion, concluding that (1) she cannot make out a prima facia case that any of the identified documents are privileged; (2) any privilege is waived; (3) Butts has not identified a basis to exclude any testimony; (4) no hearing is necessary because no further record is required to resolve this motion; and (5) suppression would not be the proper remedy. (ECF # 28.) As Judge Dries has recommended, the government asks that this Court deny Butts' motion.

### I.    Background.

#### A.  Butts' scheme and the indictment.

Butts operates Lordan Care Adult Family Homes LLC, a company providing "adult family homes," which are locations where unrelated adults live together, receiving care that goes beyond simple room and board. (ECF # 1 ¶ 1.) Lordan indirectly received Medicare and Medicaid funding

for these services, through its relationship with a company called Community Care Inc. ("CCI"). (*Id.* ¶¶ 3-6.) CCI is responsible for finding adult home placements for certain residents. (*Id.* ¶ 3.) CCI is funded in part by Medicare and Medicaid money, and it in turn contracts with adult family homes to place residents. (*Id.*) Those adult family homes bill CCI, who pays them for their services. (*Id.*) These services include contractually specified numbers of caregivers, which can fluctuate for specific residents depending on need and the specific contract arrangement. (*Id.* ¶¶ 6-7.)

As the indictment sets out, Butts used Lordan to charge CCI for more care than Lordan provided. Butts billed CCI, representing that Lordan had provided more caregiver hours than it really did. (*Id.* ¶ 15.) CCI then paid those bills. (*Id.* ¶ 22.) Butts, as Lordan's owner, certified the billings, and signed the contracts between CCI and Lordan on Lordan's behalf. (*Id.* ¶ 11.) This scheme resulted in the currently pending 16-count indictment, which includes 8 counts of wire fraud and 8 counts of healthcare fraud. Both sets of charges rest on the same overbilling scheme.

This current investigation began in approximately 2020. Butts contends that the government's case against her was constructed on information provided by Paul Kasprowicz, who is both an attorney and CPA. Kasprowicz worked for Lordan and, among other things, responded to a pair of subpoenas served on Lordan by the government. The responses to these subpoenas contained a total of 573 files, 137 in the first 436 in the second. None of the subpoenas went to Kasprowicz himself, both were to Lordan.

There was another government investigation, that predated the one leading to the current charges. In addition to the above-described scheme, Butts also did not pay her personal taxes. This failure to properly pay generated an IRS investigation, and a judgment by the Tax Court that Butts was obligated to pay certain outstanding sums, concerning tax years 2013-2017. It appears that Kasprowicz, who has a CPA in addition to his JD, worked on the responses to those matters.

As the above demonstrates, however, the current criminal case does not concern these past tax concerns. Rather, the current case arises from Butts overbilling for care she claimed was provided to residents placed in her company's apartments by CCI.

### B. The present motion.

Butts, through her current counsel, has moved to exclude 177 documents and certain testimonial evidence, contending that the documents are privileged and should not have been produced by Kasprowicz, and that Kasprowicz talked to other potential witnesses disclosing unspecified privileged information. (ECF # 19 at 1-2; ECF # 29 at 1.)

As the government explained to Judge Dries, this motion really concerns 191 documents—the 177 documents identified by the defense, and 14 duplicates.[1] These are identified on Appendix A, which includes all the information present on defense's log, and identifies the duplicate documents (grouped together) as well as the government's position as to each document. These 177 documents represent nearly one third of the 573 documents Kasprowicz produced.

Butts has also asserted that Kasprowicz provided privileged information to third parties, presumably orally, such as CCI employees and presumably government investigators. (ECF # 19 at 3.) Butts' initial motion did not specify the nature of this supposedly privileged information, or provide details into how this information would have guided the government's investigation. Her objections to Judge Dries' report and recommendation does not provide any additional detail, although she again asserts that she challenges the denial of the "motion to exclude the testimony of Mr. Kasprowicz." (ECF # 29 at 1.) As described above, the government's case rests largely on documents obtained through third parties—such as the billing Butts submitted to CCI, her

---

[1] The government's computer systems flagged these duplicates, and during the meet and confer that preceded the motion's filing, the government identified them for the defense.

timesheet and payroll records obtained through third party services, and other data sources outside the documents Lordan provided.

## II.    Legal Standard.

A district judge reviews *de novo* the portions of a magistrate judge's recommendation to which a party timely objects. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(2), (3). "Objections to a magistrate's report and recommendation must be specific and limited to those issues upon which the objector disagrees with the magistrate's analysis." *United States v. Gaeta-Galvez*, No. 18-CR-134, 2019 WL 989766, at *2 n.1 (E.D. Wis. Mar. 1, 2019). The court may "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1).

Substantively, Butts is claiming that the identified documents (and unspecified testimony) are protected by the attorney-client privilege. A document is privileged if it is either attorney client communication or represents attorney work product. Attorney client privilege applies to communications that meet the following standard:

> (1) where legal advice of any kind is sought (2) from a professional legal advisory in his capacity as such, (3) the communication relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Evans v. City of Chicago*, 231 F.R.D. 302, 311 (N.D. Ill. 2005) (quoting *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir.1983)). The privilege is construed narrowly, *United States v. White*, 970 F.2d 328, 334 (7th Cir. 1992), and the burden of establishing the privilege rests on the party who invokes it, *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991).

These privileges are subject to waiver, where documents or communications are produced to a third party, including during discovery. The waiver analysis requires considering (1) whether disclosed documents were privileged, (2) whether the disclosure was inadvertent, and finally, (3)

even if disclosure was inadvertent, was the privilege waived. *MSP Real Estate, Inc. v. New Berlin*, 2011 WL 3047687, *3 (E.D. Wis. 2011) (citing *Judson Atkinson Candies, Inc. v. Latini–Hohberger Dhimantec*, 529 F.3d 371, 387 (7th Cir.2008).

### III.    Argument.

This Court should adopt Judge Dries' recommendation, and deny Butts' motion without a hearing. As Judge Dries concluded, Butts cannot make out a prima facie case that any of the documents are privileged.

### A. This Court need not consider arguments incorporated by reference in objections to a report and recommendation.

At the outset, Butts objects to the report and recommendation by "adopt[ing] and incorprat[ing] . . . all arguments previously made by her counsel in her brief-in-chief and in her reply brief." (ECF # 29 at 1.) This type of broad incorporation by reference is not permitted by Federal Rule of Criminal Procedure 59(b)(2), which requires that the party opposed to a magistrate judge's conclusions file "specific written objections to the proposed findings and recommendations." As this Court has explained, "[p]ermitting a party to incorporate his original briefing into his objection briefing by reference . . . turn[s] the objection process into a simple do-over before a different judge." *Gaeta-Galvez*, 2019 WL 989766, at *2 n.1; *see also United States v. Charles*, 476 F.3d 492, 497 (7th Cir. 2007) (where a magistrate's report addresses more than one issue, a "specific objection is necessary to alert the district court to the finding or findings the objecting party wishes to challenge.").

To be thorough, and provide the Court will full context about the issues in dispute, the government has endeavored to address the arguments it feels are presented here, as well as a discussion of the arguments it presented to Magistrate Judge Dries in response to the original

motion. But, to the extent Butts wishes to rely on an argument not directly presented in her objections, the government asks that this Court reject that attempt.

## B. Butts has not established that any of the documents are privileged.

Butts claims that a hearing or *in camera* inspection of the documents identified on her privilege log is necessary to determine whether they are privileged. Judge Dries concluded that "it is apparent from the face of Butts' privilege log and her motion that none of the documents is even theoretically privileged. Instead, her motion is premised on a fundamentally unsound definition of the attorney-client privilege." (ECF # 28 at 11.) In her objections, Butts makes no attempt to respond to this conclusion—she simply asserts that Kasprowicz waived her privilege or provided the government with documents that were protected from such disclosure.

As it did before the Magistrate Judge, the government has provided this Court with its Attachment A, which lists every document on Butts' privilege log, as well as the duplicates of those documents. Those materials are organized into seven categories, and are addressed herein. With the exception of 8 documents (and 5 duplicates), which may be materials concerning Butts' personal taxes generated during a prior IRS investigation, none of the materials are even remotely privileged.

### 1. The undisputed documents.

To spare the Court and parties unnecessary time litigating this case, the government has agreed not to use 13 of the 191 documents. (This includes 8 documents on the log, and 5 duplicates of them.) These are highlighted in grey on Appendix A, and identified as "Not in dispute."

None of these documents is *actually* privileged, in that any privilege has long since been waived. But, because they are handwritten notes possibly prepared by Kasprowicz, they might theoretically be attorney work product (although not a communication protected by attorney-client privilege). Thus, the government will not use these 13 documents.

6

### 2. The remaining documents are not privileged.

Judge Dries concluded that "[a] vast majority" of the rest of the documents "appear to be general business records that were prepared by third parties and/or kept by Lordan Care in the ordinary course of its business (e.g., bank records, payroll information, resident authorizations prepared by Community Care, employee files, company tax information, patient records, etc.)." (ECF # 28 at 5.) This set includes just a single document that may have been drafted by Kasprowicz. (*Id.*) Butts asserts that her allegations make out "a *prima facie* case for privilege, and ha[ve] placed several material facts in dispute." (ECF # 29 at 3.) Judge Dries rejected this argument, concluding that based on the information provided by Butts none of these documents appear privileged—therefore Kasprowicz could not have violated any privilege when the documents were produced. Butts has not directly responded to this point, and has relied on general allegations that Kasprowicz's actions were nevertheless inappropriate. As discussed below, Judge Dries' conclusion that these documents are not privileged was correct, and this Court may deny Butts' motion without a hearing.

### a. Bank/Payroll Information

Of the 191 documents, 25 represent bank records or payroll information. This is comprised of 24 of the documents on defense's log, and one duplicate. These are indicated in light blue on Appendix A.

It is unclear why defense thinks these documents could be subject to either privilege or work-product protections. They were prepared by third parties—generally (according to Butts' log) BMO Harris Bank, or Paychex—and were not obviously sent to an attorney, certainly not by Butts to her personal counsel. For most, such as the bank records, the government could (and has) obtained identical information from third parties, which illustrates the documents' non-privileged nature. And there is no basis to exclude financial records in a federal criminal prosecution. The

defense has not even attempted to construct such an argument, and has not cited any case or statute providing that purely financial records, stored by third parties, could be protected from discovery or use in a criminal proceeding.

Finally, numerous substantively indistinguishable documents are present, unchallenged, in other parts of the production. Butts' current counsel produced 26 BMO Harris bank statements (one example is at BUTTS-78097). It is unclear why the defense believes these records are different from the check images it is attempting to claw back through this motion. Regardless, the unchallenged production of similar information further illustrates that these documents are not privileged and should not be suppressed.

### b. CCI Authorizations

Of the 191 documents, 36 are resident authorizations prepared by CCI. All are on Butts' log, there are no duplicates. They are indicated in tan on Appendix A.

These documents are not plausibly privileged. Each of them was authored by CCI (as Butts' log acknowledges), not Lordan or its lawyers. When CCI authorizes Lordan to bill for a specific resident, it generates a form identifying (1) the dates covered by the authorization, (2) the codes Lordan may bill, and (3) the number of times Lordan may bill that code during the covered time period. These 36 documents are those forms, sent to Lordan from CCI.

Like the bank records, these documents are stored by a third party (here, CCI). The government has obtained CCI's copies of these records, and they are contained within the production provided to Butts at the outset of the criminal proceedings. Given that these records are made and kept by a third party, rather than Butts or her attorney, there is no basis for their exclusion as privileged materials.

### c. Employment Material

Of the 191 documents, 86 are employee files. All are on Butts' log, there are no duplicates. These are indicated in light purple on Appendix A.

These are generally large files, with what would likely be distinct documents if stored in a paper file. They include, for example, materials such as the employee's application form, background check information, documents confirming employee onboarding training, and similar materials. For example, one (starting at BUTTS-000081783) is a letter and certificate from the Red Cross to an employee, certifying training on Conscious Choking. There is no indication from these files that they were authored by an attorney (and defendant's log contains no such indication) or that they were used to solicit attorney advice. Given these facts, there is no basis on which they can be privileged.

### d. Lordan Care Tax Information

Of the 191 documents, 8 are Lordan Care's tax information. This is comprised of 5 of the documents on defense's log, and 3 duplicates. These are indicated in pink on Appendix A.

These materials are corporate tax records. Although the government is not challenging the few documents pertaining to Butts' personal taxes, there is no basis to exclude the records on the log pertaining to Lordan's corporate taxes. According to Butts' log, many of these documents were sent to the IRS, which would of course eliminate any theoretical privilege. And irrespective of where they were sent, the log does not claim that any of these documents was sent to or drafted by an attorney. They do not appear to have been prepared under an attorney's supervision, or in anticipation of litigation of some sort. Accordingly, they are simply not privileged.

### e. Resident Information

Of the 191 documents, 6 are documents containing patient records, generally patient care records. All are on Butts' log, there are no duplicates. These are indicated in green on Appendix A.

These documents contain information regarding how specific residents received care at Lordan, or information about medical conditions these residents possess. Such material is simply not privileged—it does not relate to any legal advice or legal question. Like the other records identified on Lordan's log, these documents are created by Lordan in the course of its work, and contain day-to-day operational information. There is no reason to believe they were drafted by an attorney or sent to one. Butts' request to exclude these documents is meritless.

### f. Third-Party Preparer

Of the 191 documents, 13 are not privileged because they were prepared by a third party (often among other reasons). This category includes 9 documents on defendant's log, and 4 duplicates (3 of the same document, BUTTS-00068608). These are indicated in yellow on Appendix A.

Each of these materials was prepared by a third party—i.e., someone outside of Lordan. According to defense's log, this includes six documents from CCI. Another document is prepared by the Wisconsin Department of Health Services. One (with a duplicate) is an engagement letter prepared by one of Butts' accountants. Because these documents were drafted by third parties, not lawyers representing Butts, they are not privileged.

The final four documents are all identical (one of them is on the defense log, and the other three are duplicates). This, per the filename, is a document sent from the IRS to defense counsel. Obviously, a document prepared by the government cannot possibly be privileged here, in a case

against the government. But, in addition, two of the duplicates of the document were produced by Butts' current counsel, rather than by Kasprowicz. There is no question that these documents should not be treated as privileged.

### g. Third-Party Recipient

Finally, there are 3 documents on the privilege log (plus a duplicate for a total of 4) that are not privileged because they were transmitted to a third party. These are in bright orange on Appendix A.

The first of these documents is the letter Butts sent to the United States Attorney; as discussed above, this is not a privileged document. There are two copies of an application for a Paycheck Protection Program loan that went to a bank as part of the loan process; again, the disclosure of this document makes it not privileged. And, finally, there is a copy of Lordan's bylaws. The last page of this documents is stamped "FILED," and it appears to be a copy of the version of the bylaws that was submitted to the state of Wisconsin. This is a publicly available document, and is not entitled to privilege.

*     *     *     *     *

In sum, none of these categories of documents are privileged. As Judge Dries concluded, these are mine-run corporate records—if they are privileged, then essentially every corporate record in the United States is privileged. (ECF # 28 at 6.) These documents, on their face, are not privileged, and therefore this Court should deny Butts' motion without a hearing. *See White*, 950 F.3d at 430.

### 3. Any privilege has been waived.

In the alternative, Judge Dries concluded that even if the documents were privileged (and they are not), any privilege was long ago waived by Lordan's production of them to the government. (ECF # 28 at 7.) To assess waiver, the Court considers (1) whether disclosed

documents were privileged, (2) whether the disclosure was inadvertent, and finally, (3) even if disclosure was inadvertent, was the privilege waived. *MSP Real Estate, Inc. v. New Berlin*, No. 11-C-281, 11-C-608, 2011 WL 3047687, at *3 (E.D. Wis. July 22, 2011) (citing *Judson Atkinson Candies, Inc. v. Latini–Hohberger Dhimantec*, 529 F.3d 371, 387 (7th Cir. 2008)).

As an initial matter, this discussion is immaterial as none of the documents is privileged. But, even if they were, the circumstances here demonstrate that Lordan's production of them was not inadvertent. "Courts have not established a bright-line rule for determining whether a document was inadvertently produced; instead, courts look at the circumstances surrounding the disclosure." *Judson Atkinson*, 529 F.3d at 388. "Factors include 'the total number of documents reviewed, the procedures used to review the documents before they were produced, and the actions of the producing party after discovering that the documents had been produced.'" *MSP Real Estate* 2011 WL 3047687 at *3 (quoting *Wunderlich-Malec Sys. v. Eisenmann Corp.*, No. 05-C-4343, 2007 WL 3086006, at *3 (N.D. Ill. Oct. 18, 2007).

As Judge Dries concluded, "[a]ll three factors weigh heavily against a finding of inadvertence in our case." (ECF #28 at 8.) The production was relatively small, as Kasprowicz produced only 573 documents. Butts now asserts that 177 of those (nearly a third) were produced in error. This ratio does not suggest that the decision to produce the documents was anything other than intentional. Butts contends that Kasprowicz "unlawfully turned over hundreds upon hundreds of documents to the government in response to the subpoenas" that "there was nothing Ms. Butts could have done to prevent the disclosures" because she was unaware that Kasprowicz was cooperating with the government.[2] (ECF # 29 at 2.) But the subpoenas were served on Lordan, and the Lordan records Kasprowicz produced on the company's behalf are not privileged. Butts has

---

[2] The government notes that while Butts asserts in her objection that Kasprowicz improperly turned over "hundreds and hundreds" of documents, her privilege log identifies 177.

not explained how Kasprowicz's actions in producing documents in response to lawful subpoenas was somehow outside the scope of his permitted behavior. And there is Moreover, Butts did not—either before the magistrate judge or now—"describe[] the process she and her legal team used to respond to the government's subpoenas or any precautions implemented to prevent the disclosure of privileged material." (ECF # 28 at 8.)

Butts claims that Kasprowicz's production of the documents violates ABA Model Rule 1.6(a), which prohibits a lawyer from revealing privileged information without a client's consent. (ECF # 29 at 3.) But she has not explained how Kasprowicz's actions exceeded his role as her or Lordan's counsel. It is extremely common for an attorney to supervise a company's response to a subpoena. Here, nothing about the production—which as discussed above included entirely normal corporate records such as payroll information, bank records, personnel files, and the like—is unusual. As the magistrate judge observed, Butts has not provided any clarity about what she authorized Kasprowicz to disclose or what steps she and her counsel took to respond to the government's subpoenas. (ECF # 28 at 9.) Finally, Butts' current clawback attempt, which occurs years after the documents were disclosed, also suggests that the disclosure was not inadvertent. *Id.*

Even if disclosure was inadvertent, any privilege has been waived. To assess waiver, courts use a "balancing test," considering "(1) the reasonableness of the precautions taken to prevent disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness." *Judson Atkinson*, 529 F.3d at 388–89. As Judge Dries concluded, each of these factors favor waiver. (ECF # 28 at 9.)

As discussed above, there is no evidence that Butts or Kasprowicz followed any precautions to avoid disclosure. Butts has not provided any evidence of instructions she provided to Kasprowicz or steps she and her attorneys took to respond to the subpoenas. As noted above,

13

and not disputed by Butts, the government has these materials because Lordan produced them in response to subpoenas. The government gave Lordan years to respond to those subpoenas. And while Butts now insists that the production of these materials was in error, she has "does not describe any steps she took to prevent the disclosure." (ECF # 28 at 9.)

Next, as noted above, the years that have passed since the documents' supposed erroneous production favors a finding of waiver. The third and fourth factors—the scope of the total discovery produced and extent of the erroneous production—also militate in favor of waiver. The challenged documents are a substantial portion of the total, small production in response to the subpoenas.

Finally, fairness considerations cut strongly against allowing clawback. Butts has not identified any "disproportionally harsh or unfair consequences" that would result from waiver. *See Wunderlich-Malec Systems, Inc. v. Eisenmann Corp.*, 2007 WL 3086006, at *6 (N.D. Ill., Oct. 18, 2007). These documents have been in the government's possession (with Butts' knowledge) for years, and allowing her to remove them now (and to seek to limit "derivative" evidence) would unfairly limit the government, which reasonably relied on a production of documents by Lordan to continue its investigation. Butts has also made no allegation that any government representative had any reason to believe these materials were privileged, particularly given that many of them could be obtained from third parties.

Under the circumstances presented by the motion, this Court should reject Butts' attempt to suppress these documents. They are not privileged, have been in the government's possession for years, and their production appears intentional. This Court adopt Judge Dries' recommendation and deny the motion to suppress.

**C. This Court should not exclude any testimony.**

Butts' initial motion also asked to exclude the testimony of witnesses, and asked for an evidentiary hearing to examine "whether the disclosure of Ms. Butts' privileged communications by Attorney Kasprowicz directed and impacted the investigation of this case." (ECF # 19 at 11.) Although the precise scope of Butts' objection is unclear, the present objection asks this Court not to adopt Judge Dries' finding that would deny the motion to exclude Kasprowicz's testimony. (ECF # 29.) As Judge Dries concluded, however, there is no basis at this time to exclude any testimony, explaining that Butts has not identified any specific privileged information that third parties might testify about. (ECF # 28 at 10.) And, as to Kasprowicz, Judge Dries noted that any issues with his possible testimony can be handled via a motion *in limine* or during the trial itself. (*Id.*)

Butts's objection does not raise any specific arguments regarding her request to exclude testimony of other witnesses. There is no basis to do so. If Butts believes that certain witnesses possess privileged information, *she could have identified that information*. She attempted to do so in her privileged log. Given that the privilege log is comprised nearly entirely of documents produced *by other parties*, it is hard to see what privileged derivative information Butts might wish to suppress.

As an example, Butts claims Kasprowicz provided information to CCI employees. But, CCI was the entity responsible for paying Lordan for its work and supervising Lordan's care of its residents. In that capacity, CCI employees engaged in hundreds of written exchanges with Butts. Those exchanges, however, are a natural outgrowth of the companies' work together. Butts claims privilege over more than two dozen documents prepared by CCI, but no document CCI sent to Lordan could possibly be privileged at all, much less privileged as to Lordan. Under the

15

circumstances here, there no basis to believe that any witness has obtained privileged information, or that a hearing is necessary to consider that issue.

In addition, as Judge Dries has concluded, the need for any relief here is speculative. It is unclear at this point whether Kasprowicz, or any other witness, would testify at a trial, and what information they might testify about. If there is a risk of a witness improperly disclosing privileged information, that concern can be addressed via a motion in limine closer to trial. There is no need now to categorically exclude any testimony. Accordingly, the government respectfully asks that this Court deny the motion.

**D. No hearing or in camera review is necessary to resolve this motion.**

As Judge Dries concluded, no hearing is necessary to resolve this motion. Butts claims otherwise, asserting that a hearing is required "to determine the extent of the attorney-client relationship" between herself and Kasprowicz and "the issue of whether the communications set forth on the privilege log are in fact privileged." (ECF # 29 at 4.) There is no need for a hearing on whether an attorney-client relationship existed because, as Judge Dries explained in his recommendation, "there is no dispute about whether an attorney-client relationship existed—the government explicitly assumed that Kasprowicz was her lawyer at the time." (ECF # 28 at 11.) Nor, as Butts suggests, does the "extent" of any attorney-client relationship matter here. (ECF # 29 at 4.) As Judge Dries correctly concluded, even assuming Kasprowicz *was* her lawyer, none of the identified documents is privileged. (ECF # 28 at 11.) Butts offers no rejoinder to this conclusion— simply asserting, as she did before the magistrate judge, that the documents Kasprowicz turned over are privileged. She has not offered a persuasive basis to reject Judge Dries' report and recommendation.

Butts also asserts an "in camera" review is necessary, presumably both of the allegedly privileged documents and of Kasprowicz's supposed misconduct. (ECF # 19 at 11, ECF # 29 at 4.) As noted above, no review of the documents is necessary because it is apparent from Butts' briefing that none are privileged. As to Kasprowicz's actions, Butts has accused him of being an undercover government agent—but as Judge Dries explained, "she fails to provide any information about the subpoena review process that would support her claim to being in the dark about Kasprowicz's disclosures." (ECF # 28 at 12.) Indeed, her failure to provide evidence is contrary to her allegation that Kasprowicz's supposed misdeeds are "detailed in hundreds of pages of reports form the government." (ECF # 19 at 9.) Butts has not cited even a single of these pages. On this record, there is no need for an "in camera" review or an evidentiary hearing.

**E. Suppression is not the appropriate remedy.**

Finally, as Judge Dries concluded, suppression is not an appropriate remedy here, to the extent Butts seeks it. (ECF # 28 at 12.) Judge Dries explained that Butts has not alleged any outrageous government misconduct that would justify suppression, and she offers none in her objection to his recommendation. Accordingly, this Court should adopt Judge Dries' conclusion that suppression is not the proper remedy here.

**IV. Conclusion.**

As discussed above, Judge Dries correctly recommended rejecting Butts' meritless motion. The government respectfully asks that this Court adopt Judge Dries' Report and Recommendation to deny the motion without a hearing.

Dated at Milwaukee, Wisconsin, this 20th day of June, 2025.

Respectfully submitted,

RICHARD G. FROHLING
Acting United States Attorney

By:     */s/ Carter B. Stewart*

ZACHARY J. COREY
CARTER B. STEWART
Assistant United States Attorneys
Office of the United States Attorney
Eastern District of Wisconsin
517 E. Wisconsin Ave, Room 530
Milwaukee, WI 53202
Phone (414) 297-1700

18