UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

          Plaintiff,

  v.                                      Case No. 24-cr-00124

LORI BUTTS,
a/k/a LORI BANYARD,

          Defendant.

## PLEA AGREEMENT

1.      The United States of America, by its attorneys, Brad D. Schimel, United States Attorney for the Eastern District of Wisconsin, and Carter Stewart, Assistant United States Attorney, and the defendant, Lori Butts, individually and by attorney Gabriela Leija, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2.      The defendant has been charged in sixteen counts of a sixteen-count indictment, which alleges violations of Title 18, United States Code, Sections 1343 and 1347.

3.      The defendant has read and fully understands the charges contained in the indictment. She fully understands the nature and elements of the crimes with which she has been charged, and those charges and the terms and conditions of the plea agreement have been fully explained to her by her attorney.

4.      The defendant voluntarily agrees to plead guilty to Count Eight of the Indictment, which is attached hereto as Exhibit A.

5. The defendant acknowledges, understands, and agrees that she is, in fact, guilty of the offense described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish her guilt beyond a reasonable doubt:

> Starting in 2014 and continuing to the present, Lori Banyard Butts has owned and operated Lordan Care Adult Family Home, LLC ("Lordan"). Lordan owned and operated adult family homes, which are facilities where residents aged 18 and older both reside and receive care. This care includes supervision, assistance with daily living activities, and assistance with medication.
>
> Lordan provided adult family home care through contracts with Community Care Inc. ("CCI"). Under its contracts with CCI, Lordan agreed to provide both room and board and a specified level of staffing for each resident. At the time she executed the contracts between Lordan and CCI, Butts understood that the funds CCI used to pay Lordan would come from federal and state government healthcare programs, including Wisconsin Medicaid.
>
> In addition to the staffing authorized by the contracts between Lordan and CCI, Lordan would sometimes obtain authorization to provide and bill for additional care for identified patients. This authorization would be provided to Lordan from CCI in a Letter of Agreement ("LOA"). While an LOA permitted Lordan to bill for additional care, Lordan was authorized only to bill for care it actually provided. Because billing for additional staffing pursuant to an LOA was done in 15-minute increments, it was possible for Lordan to bill for none, some, or all of the care authorized by an LOA.
>
> Butts, on behalf of Lordan, negotiated and signed all contracts and LOAs between Lordan and CCI. Butts was aware of the staffing levels required and authorized by those contracts and LOAs. Butts directed her staff to schedule a certain number of caregivers to provide care to each resident placed with Lordan by CCI.
>
> Beginning by at least July 2019, and continuing until at least December 31, 2020, Butts submitted bills to CCI for hours of work that Lordan staff did not perform. The number of caregivers specified by Butts was routinely less than what was required and/or authorized by the contracts and/or LOAs. Butts was aware that Lordan was not providing the maximum number of caregivers authorized, but she nevertheless submitted bills to CCI indicating that Lordan had provided full or nearly full staffing levels.
>
> Count Eight is an example of such a bill. CCI placed resident K.W. at a Lordan facility. Butts sought and obtained two LOAs for resident K.W. covering care provided from July 1, 2019, to December 31, 2019. Together, these LOAs authorized Lordan to provide and bill for two caregivers dedicated solely to K.W. during this six-month period. On November 12, 2019, Butts sent an email to a CCI employee attempting to get

2

authorization to bill for the second dedicated caregiver. Specifically, she wrote she "was waiting to hear back regarding K.W. she's a 2.1 haven't been paid now since June."

Ultimately, CCI and Lordan agreed, via LOA, that Lordan would be authorized to provide and bill for that second caregiver in 15-minute increments. Specifically, the LOA authorized billing under code S5134, modifier C1, for this second caregiver. CCI issued that LOA in March 2020, but it covered the time period from July 1, 2019, to December 31, 2019.

Butts knew that she had not provided K.W. with two dedicated caregivers during the relevant time period. In fact, K.W. shared a single caregiver with another resident. Despite this knowledge, on March 11, 2020, Butts submitted Claim No. 984472098 to CCI, which falsely represented that Lordan had provided 17,664 units of care covered by Code S5135, modifier C1, to K.W. between July 1, 2019, and December 31, 2019. These "units" each represented 15 minutes of care and were the maximum number of billing units available under the LOA. By billing for 17,664 units, Butts falsely represented that Lordan had provided K.W. with a second additional caregiver continuously, with no gaps, during the time period covered by the LOA. Butts submitted this bill knowing that its claims were false and with the goal of convincing CCI to pay the bill for work Lordan had not completed. CCI ultimately paid the bill in full.

Butts engaged in similar billing schemes with other residents during the time covered by the indictment. As a result of Butt's scheme to defraud, CCI paid Lordan substantial sums of money for services never rendered. Butts then converted a substantial amount of the fraud proceeds for her personal use.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

## PENALTIES

6. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum term of imprisonment and fine: Count Eight, 10 years and $250,000. Each count also carries a mandatory special assessment of $100, and a maximum of 3 years of supervised release. The parties further recognize that a restitution order may be entered by the court. The parties' acknowledgments, understandings, and agreements with regard to restitution are set forth in paragraph 29 of this agreement.

7. The defendant acknowledges, understands, and agrees that she has discussed the relevant statutes as well as the applicable sentencing guidelines with her attorney.

## DISMISSAL OF COUNTS

8. The government agrees to move to dismiss the remaining counts of the indictment at the time of sentencing.

## ELEMENTS

9. The parties understand and agree that in order to sustain the charge of Healthcare Fraud as set forth in Count Eight in violation of 18 U.S.C. § 1347, the government must prove each of the following propositions beyond a reasonable doubt:

> First¸ there was a scheme to defraud a health care benefit program, as charged in the Count Eight;
>
> Second, the defendant knowingly and willfully carried out and attempted to carry out the scheme;
>
> Third, the defendant acted with the intent to defraud the health care benefit program;
>
> Fourth, the scheme involved a materially false or fraudulent pretense, representation, or promise; and
>
> Fifth, the scheme was in connection with the delivery of or payment for health care benefits, health care items, and health care services.

## SENTENCING PROVISIONS

10. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

11. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12. The defendant acknowledges and agrees that her attorney has discussed the applicable sentencing guidelines provisions with her to the defendant's satisfaction.

13. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

14. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

15. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

## Base Offense Level

16. The parties acknowledge and understand that the government will recommend to the sentencing court that the applicable base offense level for the offense charged in Count Eight is 6 under Sentencing Guidelines Manual § 2B1.1(a)(2).

17. If the sentencing court determines that the defendant does not have any criminal history points and otherwise meets all of the criteria listed in Sentencing Guidelines Manual § 4C1.1(a), then the government will agree to recommend to the sentencing court that a 2-level decrease is applicable pursuant to § 4C1.1(a) of the Sentencing Guidelines

### Specific Offense Characteristics

18. The parties jointly agree to recommend to the sentencing court that that a 14-level increase for a loss in excess of $550,000, but less than $1,500,000, under Sentencing Guidelines Manual § 2B1.1(b)(1)(H) is applicable. The parties acknowledge and understand that the government will recommend to the sentencing court that a 2-level increase for a loss to a government health care program of more than $1,000,000 under Sentencing Guidelines Manual § 2B1.1(b)(7) is applicable. The parties acknowledge and understand that the government will recommend to the sentencing court that a 2-level increase for abuse of a position of trust or use of special skill under Sentencing Guidelines Manual § 3B1.3 is applicable.

### Acceptance of Responsibility

19. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), and to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b), but only if the defendant exhibits conduct consistent with those provisions.

### Sentencing Recommendations

20. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

21. Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement.

22. The government agrees to recommend a sentence within the applicable sentencing guideline range, as determined by the court.

### Court's Determinations at Sentencing

23. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

24. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

### FINANCIAL MATTERS

25. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in

the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

26. The defendant agrees to provide to the Financial Litigation Program (FLP) of the United States Attorney's Office, at least 30 days before sentencing, and also upon request of the FLP during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLP and any documentation required by the form. The defendant further agrees, upon request of FLP whether made before or after sentencing, to promptly: cooperate in the identification of assets in which the defendant has an interest, cooperate in the liquidation of any such assets, and participate in an asset deposition. The defendant expressly authorizes the United States to obtain the defendant's credit report at any time.

## Fine

27. The parties agree to recommend to the sentencing court that no fine be imposed against the defendant.

## Special Assessment

28. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

## Restitution

29. The defendant agrees to pay restitution, for the offense conduct related to Count Eight and all relevant conduct related to the scheme described in the Indictment, as ordered by the court. The defendant understands that because restitution for the offenses is mandatory, the amount of restitution shall be imposed by the court regardless of the defendant's financial resources. The defendant agrees to cooperate in efforts to collect the restitution obligation. The

defendant understands that imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.

## Forfeiture

30. The defendant stipulates that she has a one hundred percent ownership interest in the real property located at 105 Legend Way, Wales, WI 53183. She agrees to the forfeiture of the real property located at 105 Legend Way, Wales, WI 53183 as a substitute asset and to the entry of a preliminary order of forfeiture. The defendant further agrees to forfeit the personal property, including furnishings, decorations, furniture, and other such effects, located within 105 Legend Way, Wales, WI 53183. The government, in its sole election, may decide not to proceed with forfeiture of the home or its furnishings.

31. The parties acknowledge and understand that the government reserves the right to proceed against assets not identified in this agreement. The parties further agree that the forfeiture of this property will be determined by the court before or at the time of sentencing. The defendant further agrees to waive all constitutional and statutory challenges, in any form or manner (including direct appeal, habeas corpus, or any other means), to any forfeiture carried out in accordance with this plea agreement on any grounds. The defendant agrees to take all steps as requested by the United States in connection with any criminal, civil, or administrative forfeiture proceeding, including executing documents needed to pass clear title to forfeitable assets to the United States and to facilitate the sale of such forfeitable assets.

## DEFENDANT'S WAIVER OF RIGHTS

32. In entering this agreement, the defendant acknowledges and understands that she surrenders any claims she may have raised in any pretrial motion, as well as certain rights which include the following:

a. If the defendant persisted in a plea of not guilty to the charges against her, she would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and her attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and she would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on her own behalf. The defendant would be entitled to compulsory process to call witnesses.

e. At such trial, defendant would have a privilege against self-incrimination so that she could decline to testify and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify on her own behalf.

33. The defendant acknowledges and understands that by pleading guilty she is waiving all the rights set forth above. The defendant further acknowledges the fact that her attorney has explained these rights to her and the consequences of her waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the

defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

34. The defendant acknowledges and understands that she will be adjudicated guilty of the offense to which she will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

35. The defendant knowingly and voluntarily waives all claims she may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

36. Based on the government's concessions in this agreement, the defendant knowingly and voluntarily waives her right to appeal her conviction or sentence in this case and further waives her right to challenge her conviction or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. § 2255. As used in this paragraph, the term "sentence" means any term of imprisonment, term of supervised release, term of probation, supervised release condition, fine, forfeiture order, and restitution order. The defendant's waiver of appeal and post-conviction challenges includes the waiver of any claim that (1) the statutes or Sentencing Guidelines under which the defendant is convicted or sentenced are unconstitutional, and (2) the conduct to which the defendant has admitted does not fall within the scope of the statutes or Sentencing Guidelines. This waiver does not extend to an appeal or post-conviction motion based on (1) any punishment in excess of the statutory maximum, (2) the sentencing court's reliance on any constitutionally impermissible factor, such as race, religion, or sex, (3) ineffective assistance of counsel in connection with the negotiation

of the plea agreement or sentencing, or (4) a claim that the plea agreement was entered involuntarily.

37. The defendant knowingly and voluntarily waives any claim or objection she may have based on statute of limitations or venue.

### Further Civil or Administrative Action

38. The defendant acknowledges, understands, and agrees that the defendant has discussed with her attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

### MISCELLANEOUS MATTERS

39. The defendant agrees not to work for, or operate, any business which submits bills to government health care programs for a period of five years from the date of the defendant's release from any custodial sentence ordered in this case.

### GENERAL MATTERS

40. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

41. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

42. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

43. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

### Further Action by Internal Revenue Service

44. Nothing in this agreement shall be construed so as to limit the Internal Revenue Service in discharging its responsibilities in connection with the collection of any additional tax, interest, and penalties due from the defendant as a result of the defendant's conduct giving rise to the charges alleged in the indictment.

45. The defendant agrees to transmit her original records, or copies thereof, to the Examination Division of the Internal Revenue Service so that the Examination Division of the Internal Revenue Service can complete its civil audit of the defendant. The defendant agrees to provide any additional books and records of her which may be helpful to the Examination Division of the Internal Revenue Service to complete its civil audit of defendant.

### EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

46. The defendant acknowledges and understands if she violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. Alternatively, the government may, in its discretion, ask the Court to be released from specific obligations under this plea agreement to reflect the defendant's conduct if the defendant commits a federal, state, or local offense punishable by a term of imprisonment exceeding one year or violates a material term of the plea agreement. The defendant further

acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of her breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and her attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that she continues to be subject to the terms of the proffer letter.

## **VOLUNTARINESS OF DEFENDANT'S PLEA**

47. The defendant acknowledges, understands, and agrees that she will plead guilty freely and voluntarily because she is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

14

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 1/23/26

_____
LORI BUTTS
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 1/23/26

_____
GABRIELA LEIJA
Attorney for Defendant

For the United States of America:

Date: 1/26/26

For _____
BRAD D. SCHIMEL
United States Attorney

Date: 1/26/26

_____
CARTER STEWART
Assistant United States Attorney

15